538 F.2d 404
 176 U.S.App.D.C. 56, Fed. Sec. L. Rep. P 95,612
 SECURITIES AND EXCHANGE COMMISSION,
v.
NATIONAL STUDENT MARKETING CORPORATION et al., White and
Case and Marion JayEpley, III, Appellants.
SECURITIES AND EXCHANGE COMMISSION,
v.
NATIONAL STUDENT MARKETING CORPORATION et al., Appellants.
SECURITIES AND EXCHANGE COMMISSION,
v.
NATIONAL STUDENT MARKETING CORPORATION et al., Appellants.
 Nos. 75-1700 to 75-1702.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 6, 1975.
Decided May 17, 1976.
Rehearing Denied Aug. 11, 1976.
 
 Daniel A. Rezneck, Washington, D. C., with whom Milton V. Freeman, Abe Krash and Lawrence A. Schneider, Washington, D. C., were on the brief, for appellants in No. 75-1700. Steven M. Schatz, New York City, also entered an appearance for appellants in No. 75-1700.
 James A. Hourihan, Washington, D. C., with whom Sherwin J. Markman, Martin Michaelson and Dennis J. Whittlesey, Washington, D. C., were on the brief, for appellants in No. 75-1701.
 Mathias E. Mone, Washington, D. C., with whom William E. Hegarty, New York City, was on the brief, for appellants in No. 75-1702.
 David Ferber, Sol., Securities and Exchange Commission, Washington, D. C., with whom Frederic T. Spindel, Asst. Gen. Counsel and Lawrence A. Horn, Atty. Securities and Exchange Commission, Washington, D. C., were on the brief, for appellee. Van P. Carter, Atty. Securities and Exchange Commission, Washington, D. C., also entered an appearance for appellee.
 Before McGOWAN, TAMM and ROBB, Circuit Judges.
 Dissenting opinion filed by Circuit Judge McGOWAN.
 PER CURIAM:
 
 
 1
 This appeal concerns an affirmative defense asserted in the answer of appellants White & Case and Epley as their Fifteenth Defense to a complaint by the Securities and Exchange Commission. That defense alleges:(T)he Securities and Exchange Commission violated its own rules, procedures, and directives and the United States Constitution by instituting this action without informing . . . (appellants) that they were "prospective defendants or targets" of the Commission investigation prior to the institution of the suit, and without affording . . . (appellants) or their counsel an opportunity to present their contentions to the Commission or the Commission staff as to why they should not be sued.
 
 
 2
 Amended Answer of Defendants White & Case and Marion Jay Epley, III, to the first Amended Complaint, April 9, 1973, P 50; J.A. at 105.
 
 
 3
 The Commission moved to strike the Fifteenth Defense as legally insufficient. In response, appellants pointed to an internal, non-public memorandum of September 1, 1970, from the Commission to its senior staff, by which
 
 
 4
 the Commission request(ed) that the staff memoranda to the Commission recommending the particular action set forth separately any arguments or contentions as to either the facts or the law involved in the case which have been advanced by the prospective respondents and which countervail those made by the staff in its memoranda as a basis for the recommendation.
 
 
 5
 SEC Memorandum to All Division Directors and Office Heads, Re: Procedures Followed in the Institution of Enforcement Proceedings, September 1, 1970; J.A. 1-3. Appellants assert that this language embodies the directive which the Fifteenth Defense alleges the staff to have violated, and that the staff's departure from this procedure constitutes grounds for dismissal of this action.
 
 
 6
 The district court struck the Fifteenth Defense as legally insufficient, holding that the 1970 Memorandum was not designed for protection of prospective defendants' rights, but later vacated its decision and reinstated the Fifteenth Defense without prejudice to the Commission to renew its motion to strike. The latter order was based on the court's determination to ensure that no evidence relevant to the Commission's intent in issuing the 1970 Memorandum had been overlooked in the earlier ruling.
 
 
 7
 Appellants then requested production of various documents, including memoranda prepared by individual Commissioners and agency staff members. The Commission responded by producing the only document issued by the Commission itself that referred to the 1970 Memorandum and related to the circumstances of its issuance, a minute of the Commission approving issuance of the 1970 Memorandum and dissemination to the staff. The Commission moved for a protective order respecting 67 other internal Commission documents that fell within the scope of the request and submitted the documents to the court for in camera inspection. The Commission contended that these internal documents were protected from disclosure by the intragovernmental privilege and that, in any case, none was relevant to the intent, reason or purpose of the Commission in issuing the 1970 Memorandum. At the same time, the Commission renewed its motion to strike the Fifteenth Defense on March 18, 1975. The district court granted the Commission's motions, concluding that none of the documents contained interpretive material or tended to support petitioners' claim that the 1970 Memorandum constituted a procedural directive or that noncompliance with the discretionary procedure could be a basis for dismissal. This appeal followed.
 
 
 8
 We affirm the order of the district court, satisfied that the court was correct in concluding that the Commission documents are "protected from disclosure by reason of the privilege for internal governmental memoranda containing advice or opinions," and that the privilege should not be overridden in this instance because "none of the requested documents (examined in camera ) is relevant to the intent behind the 1970 directive." By way of explanation, the court further stated that none of the documents could indicate agency intent, since internal documents authored by agency staff or individual Commissioners "cannot be considered as an official expression of the will and intent of the Commission." The "great bulk of the documents requested . . . are not 'Commission-authored' but rather . . . consist, with few exceptions, of memoranda among individual Commissioners, their legal assistants and Commission staff." Consequently, the court concluded that such documents could not be relied upon as indicators of agency intent.
 
 
 9
 At best, the documents indicate that there was a practice of notification, at the discretion of the staff, where such notification would not impede the investigation. There is no indication that the practice was regularly followed or that any such policy was ever established by the Commission. Given the novel nature of this case, we see no procedural infirmity, Constitutional or statutory, in the decision of the staff not to inform the prospective defendants that they were under investigation or to solicit their arguments as to why they should not be sued. Mandating such a procedure would seriously burden the Commission's enforcement procedure, already characterized by adequate due process safeguards. See 15 U.S.C. § 78u (1970). Had the Commission intended to establish a procedural rule which, if breached, would require dismissal of a complaint, we think it would have said so in language far clearer and more direct than that found in the 1970 Memorandum.
 
 
 10
 For these reasons, we affirm the action of the district court in striking the Fifteenth Defense.
 
 McGOWAN, Circuit Judge, dissenting:
 
 11
 By reference to what is in the public record of this case, I can conclude only that in 1970 the Commission directed its staff to transmit with all recommendations for the institution of formal proceedings the arguments of the prospective respondents against such action. It is obvious that that policy could not be effectuated without notification being given to persons who were the targets of the staff investigations. That policy, although never publicly revealed, was in effect at the times relevant to this appeal, and on its face does not admit of any exceptions. We know also, however, that in a public release issued in 1972 the Commission characterized the practice it had been following as one permitting persons involved in a staff investigation, on their request, to submit to the Commission statements before staff recommendations for formal proceedings would be acted upon; and in that context the Commission stated the obviously correlative proposition that the staff, "in its discretion, may" take the necessary step of notifying investigation targets of the nature of the violations involved and the time available to them for making a submission to the Commission.
 
 
 12
 But whether the staff did or did not have discretion at the times here in issue does not seem to me determinative of this appeal. For even if discretion existed vis-a-vis the Commission, in relation to those under investigation, problems of procedural fair play swarm around the question of how and why that discretion is exercised in a particular case. That is especially true when, as here, professional advisers of clients under investigation are the unknowing targets. And it is not only the interests of those advisers that are affected adversely but those of the clients themselves. Is it seriously to be supposed that the lawyers here involved, if they had been apprised of their target status, would not have immediately withdrawn as counsel for the clients and, indeed, retained counsel for themselves?
 
 
 13
 I am not prepared to say that the defense in issue should have been stricken by the district court without more exploration on the record of both the authority and the justifications for the staff's proceeding as it did in this case. That exploration can, in my judgment, best be achieved by directing the reinstatement of the defense in question at the present stage of the litigation, and of ventilating its merits or demerits at trial or, at the least, after further opportunity for discovery as to exactly what the Commission's policy was and the standards by which it was being applied generally as well as in this particular instance. As a start in this direction, the district court should make available to defendants the materials examined by it in camera.