Arnold S. WELLMAN, on behalf of himself and all others similarly situated, Plaintiff,

v.

Fairleigh S. DICKINSON, LHIW, Inc., and Sun Company, Inc., Defendants.

Mordecai ROSENFELD, Plaintiff,

v.

SUN COMPANY, INC., LHIW, Inc., Fairleigh S. Dickinson, Jr., Ann Dickinson Turner, John Doe and Richard Roe (representing 31 persons, including institutions, whose names are not presently known), Defendants.

JAY–GRO FABRICS, INC. PENSION TRUST, Plaintiff,

v.

SUN COMPANY, INC., LHIW, Inc., Salomon Brothers, Fairleigh S. Dickinson, Jr. and F. Eberstadt & Co., Inc., Defendants.

BECTON, DICKINSON AND COMPANY, Marvin A. Asnes, Theodore J. Bauer, Henry P. Becton, Suzanne B. Chapman, Benedict T. Harter, Wesley J. Howe, William S. Little, Foxhall A. Parker, Foxhall A. Parker and R. Milton Boyce as trustees of the Morgan Parker 1967 Trust, C. Albert Rollenhagen, Harry Roth, Fred R. Sullivan and Raymond S. Troubh, Plaintiffs,

v.

SUN COMPANY, INC., LHIW, Inc., Fairleigh S. Dickinson, Jr., J. H. Fitzgerald Dunning, Salomon Brothers, F. Eberstadt & Co., Inc., Chemical Fund, Inc. and Surveyor Fund, Inc., Defendants.

Morton PUPKO, on behalf of himself and all others similarly situated, Plaintiff,

v.

Fairleigh S. DICKINSON, Jr., LHIW, Inc., Sun Company, Inc., J. H. Fitzgerald Dunning, Salomon Brothers, F. Eberstadt & Co., Inc., Chemical Fund, Inc. and Surveyor Fund, Inc., Defendants.

SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

SUN COMPANY, INC., LHIW, Inc., Salomon Brothers, Kenneth Lipper, F. Eberstadt & Co., Inc., F. Eberstadt & Co. Managers and Distributors, Inc., Robert Zeller, Fairleigh S. Dickinson, Jr. and J. H. Fitzgerald Dunning, Defendants.

Rubin POLNE, on behalf of himself and all others similarly situated, Plaintiff,

v.

SUN COMPANY, INC., Fairleigh S. Dickinson, Jr., LHIW, Inc., Salomon Brothers, and F. Eberstadt & Co., Inc., Defendants.

Nos. 78 Civ. 284 (RLC), 78 Civ. 291 (RLC), 78 Civ. 345 (RLC), 78 Civ. 539 (RLC), 78 Civ. 1025 (RLC), 78 Civ. 1055 (RLC) and 78 Civ. 1156 (RLC).

United States District Court, S. D. New York.

June 23, 1978.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff Arnold S. Wellman; Stanley Kaufman and Roger W. Kirby, New York City, of counsel; Harvey Greenfield, New York City, co-counsel.

Pomerantz Levy Haudek & Block, New York City, for plaintiff Mordecai Rosenfeld; Robert B. Block, New York City, of counsel.

Kreindler & Kreindler, New York City, for plaintiff Jay-Gro Fabrics; Paul M. Bernstein, Howard Zimberg and Edward A. Grossman, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff Becton,

Dickinson; Arthur Liman and Robert S. Smith, New York City, of counsel.

Patterson, Belknap, Webb & Tyler, New York City, for plaintiff Suzanne Chapman; Lawrence B. Morris, Jr., and Russell C. Deyo, New York City, of counsel.

Parker, Auspitz, Neeseman & Delehanty, New York City, for all other plaintiffs (in 78 Civ. 539); Jack C. Auspitz and Barrington Parker, Jr., New York City, of counsel.

Rabin & Silverman, New York City, for plaintiff Morton Pupko; I. Stephen Rabin, New York City, of counsel.

William D. Moran, Regional Administrator, Securities and Exchange Commission, New York City, for S.E.C.; Theodore Sonde, Charles Lerner and Larry C. Willey, Washington, D.C., of counsel.

Philips & Mushkin, P.C., New York City, for plaintiffs Rubin Polne, et al.; Martin Mushkin, New York City, of counsel.

Orans, Elsen, Polstein & Naftalis, New York City, for defendants Fairleigh Dickinson and Ann Dickinson Turner; Leslie A. Lupert and Sheldon H. Elsen, New York City, of counsel.

Cleary Gottlieb, Steen & Hamilton, New York City, for defendants Salomon Bros., F. Eberstadt & Co., Inc., F. Eberstadt & Co. Managers and Distributors, Inc., Kenneth Lipper and Robert Zeller; Edmond H. Kerr and Judith Ripps-Goldstone, New York City, of counsel.

Wachtell, Lipton, Rosen & Katz, New York City, for defendants Sun Co., Inc. and LHIW, Inc.; Bernard W. Nussbaum and Peter C. Hein, New York City, of counsel.

Wormser, Kiely, Alessandroni & McCann, New York City, for defendant J. H. Fitzgerald Dunning; Lawrence McKenna, New York City, of counsel.

OPINION

ROBERT L. CARTER, District Judge.

These actions all concern defendant Sun Company's purchase, over several days in January, 1978, of approximately 34% of the outstanding common stock of Becton, Dickinson & Co. from about 33 individuals and institutions. The primary question raised by these cases is whether defendants' activities violated §§ 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78m(d), 78n(d) and 78n(e). In addition, several of the complaints allege violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), §§ 17(d) and (e) of the Investment Company Act of 1940, as amended, 15 U.S.C. §§ 80a–17(d) and (e), and several provisions of New Jersey State law. Various forms of injunctive and monetary relief are requested.

This opinion deals with a number of issues presently pending before the court. Plaintiffs in the five class actions[1] have moved for certification of their actions as class actions. In addition, in one of those actions another individual has moved to intervene. Further, determination of the respective roles of the counsel for the class action plaintiffs, and the division of labor among them, has also required the attention of the court. Lastly, the Securities & Exchange Commission ("SEC"), as plaintiff in *Securities & Exchange Commission v. Sun Co.,* 78 Civ. 1055, has moved to strike the third affirmative defense of certain of the defendants in that action. My decisions with regard to the certification and intervention motion and the lead counsel problem have already been announced in open court. This opinion is intended to clarify and formalize those determinations and to decide the SEC's motion to strike.

*Class certification and motion to intervene*

■ Pursuant to F.R.Civ.P. 23(c)(1) and Civil Rule 11A(c) of this court, plaintiffs in

---

1. *Wellman v. Dickinson,* 78 Civ. 284; *Rosenfeld v. Sun Co.,* 78 Civ. 291; *Jay-Gro Fabrics, Inc. Pension Trust v. Sun Co.,* 78 Civ. 345; *Pupko v. Dickinson,* 78 Civ. 1025; *Polne v. Sun Co.,* 78 Civ. 1156.

the class actions have moved for an order certifying the actions as class actions.[2] Having modified their initial requests, plaintiffs now seek the certification of two classes, defined as follows:

1) All persons who owned shares of the common stock of Becton, Dickinson as of the close of business on January 16, 1978, except for (i) the defendants, and (ii) those persons who sold Becton, Dickinson common shares to Sun Company, and

2) All persons who owned Becton, Dickinson 4⅛% convertible debentures due in 1988 as of the close of business on January 16, 1978, except for (i) the defendants, and (ii) those persons who sold Becton, Dickinson common shares to Sun Company.[3]

Rule 23(a) of the Federal Rules of Civil Procedure sets out four prerequisites to a class action. The defendants in the class actions raise no issue with regard to the first three of these requirements, and it is readily apparent that each of them is satisfied in these actions.

In respect of the numerosity requirement, there were over 19 million shares of Becton, Dickinson common stock outstanding on the class date. Plaintiff Wellman, in his moving papers, claims there were at that time more than 10,000 stockholders. This may be a conservative estimate. I have no doubt that the class is so numerous that joinder of all members is impracticable.

It is equally obvious that there are questions of both law and fact common to the class. Each member of the class complains of precisely the same set of events, and the predominant legal questions in these cases is whether these events constituted illegal conduct on defendants' part under various provisions of law. Any questions in these actions that are not common to all members of the class are secondary, if not peripheral.

For much the same reason, the claims of the named plaintiffs in each action are typical of the claims of the class as a whole. The claims of each member of the class, including the named plaintiffs, are virtually identical.

The defendants do contest, however, the ability of most of the named plaintiffs fairly and adequately to protect the interests of the class. But, for the reasons set forth below, I reject such contentions.

The defendants proffer no objection to the representational capacity of Wellman, the named plaintiff in the *Wellman v. Dickinson* action, and I can see none. Rather, defendants' arguments focus on Rosenfeld, Jay-Gro Fabrics, Inc. Pension Trust, and Pupko and Polne, the named plaintiffs in the other class actions.

Based on the fact that the conduct complained of in these cases relates only to defendant Sun Company's purchases of the common stock of Becton, Dickinson, and that Rosenfeld does not own any Becton, Dickinson common stock, but rather, only debentures convertible into common stock, defendants argue that Rosenfeld cannot state any claim against the defendants and/or has suffered no damage from their actions. As was conceded at oral argument, however, the merits of a claim are irrelevant to the determination of class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40

---

2. Mr. Pupko has not moved formally for such an order, but he joins in the consolidated reply papers urging certification submitted by all plaintiffs except Mr. Wellman.

3. Without explanation of their reasoning, defendants suggest that those persons "who had

an opportunity to sell" to Sun should also be excluded from the classes of plaintiffs. The suggestion is rejected. Whether such persons have a claim against the defendants under the securities laws cannot be decided in the context of a class certification motion.

L.Ed.2d 732 (1974). Defendants also argue that Rosenfeld is potentially subject to a conflict of interest in his role as representative of shareholders on the one hand and debenture holders on the other. But such a possible conflict can be easily avoided, as plaintiffs suggest, by establishing two classes—one for each class of security—and limiting Rosenfeld's representational role to the class of which he is a member. Lastly defendants object that Rosenfeld was once associated with the law firm that represents him in this action. This association, however, ceased in 1957 and is far too attenuated to raise the spectre of a conflict of interest in the class representative.

■ Defendants also raise several objections with regard to the Jay-Gro Fabrics, Inc. Pension Trust. Their first objection—that Jay-Gro no longer owns any Becton, Dickinson stock, having sold its shares on April 4, 1978—is irrelevant. Defendants concede, as they must, the propriety of defining the class, with exceptions not germane to this issue, as those persons who held Becton, Dickinson stock as of January 16, 1978. At that time, public trading in the stock ceased for several days and defendant Sun commenced the purchases at issue in these suits. If defendants' acts caused injury, that injury was, at the least, suffered by any person who owned Becton stock on that date, regardless of whether he subsequently disposed of the stock.

■ Defendants' second objection is that the Jay-Gro trust in all likelihood will soon terminate and cease to exist as an entity. However, for the past year the trust has had only one beneficiary. Consequently, it appears that the beneficiary, as the real party in interest, may be substituted for the Trust in the eventuality of the Trust's demise *pendente lite*. Since it appears that Jay-Gro's imminent termination will have no real consequences in this law suit, it is no reason to disqualify Jay-Gro at this point as a class representative.

A related objection is that the Trust probably will not be able to bear its financial obligations as class representative in prosecuting this suit. However, one of the trustees testified at his deposition that the beneficiary is both willing and able to bear these costs in the event the Trust itself cannot. Thus, the Trust's financial "disability" does not incapacitate it as a representative either.

■ Defendant's most troublesome objection is that one of Jay-Gro's two trustees— Edward Grossman—is an associate in Kreindler & Kreindler, the firm which represents Jay-Gro here. Assumedly, the basis of defendants' objection is that Grossman may suffer from a conflict of interest between his responsibilities as a representative of absent class members and his interest in seeing his firm recover legal fees as a result of its efforts in this suit.

The cases reveal no consistent judicial approach to this kind of conflict of interest problem, and the decisions differ on whether various kinds of plaintiff-lawyer relationships make the plaintiff an inadequate representative of his class. *Compare, e.g., Fischer v. International Telephone & Telegraph Corp.,* 72 F.R.D. 170, 173–74 (E.D.N.Y.1976) *with Susman v. Lincoln American Corp.,* 561 F.2d 86, 95 (7th Cir. 1977), and *Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 275 (E.D.Pa.1975) *with Cotchett v. Avis Rent A Car System, Inc.,* 56 F.R.D. 549, 554 (S.D.N.Y.1972) (Tyler, J.).

While it is not to be assumed that an associate in a law firm is unconcerned with the litigation fortunes, financial and otherwise, of his employer, there are many counterbalancing considerations here. First, as a salaried employee, Grossman has no direct interest in any legal fees Kreindler & Kreindler may recover in this suit. *Cf. Labaton v. Universal Leaf Tobacco Co., Inc.,* No. 77 Civ. 119, slip op. at 4–5 (S.D.N.Y.1977) (Metzner, J.); *Fischer v. International Telephone and Telegraph Corp., supra.* Second, Grossman's role as a party in this suit is as a trustee of the plaintiff Trust, the sole beneficiary of which is

Grossman's mother. Thus, in distinction to the usual class representative, Grossman labors under legally and emotionally imposed fiduciary obligations which can be expected to act as an additional restraint upon Grossman putting the interest of his employer above the interest of the class he represents. *See Clark v. Cameron-Brown Co.*, 72 F.R.D. 48, 54 (M.D.N.C.1976). Third, the significance of Grossman's potential conflict is lessened considerably by the fact that there are several other independent class representatives who, in addition to Grossman, would have to approve any settlement of these actions. *See id.* at 54–55. Further, there are also independent plaintiffs in the two related non-class actions also pending before this court[4] that would no doubt play a role in any possible settlement. And lastly, the court, too, will be involved in approving any settlement of these class actions. F.R.Civ.P. 23(e). For all these reasons, I find that the potential conflict of interest arising from Grossman's relationship with Jay-Gro's attorneys is more formal than real and does not prevent the Trust from being an adequate representative of the class. Thus, in view of all the circumstances of this case, *see Susman v. Lincoln American Corp., supra,* 561 F.2d at 90, 93–94, I find that Grossman's employment relationship with Kreindler & Kreindler will not prevent Jay-Gro from fairly and adequately protecting the interests of absent class members.

With regard to Pupko and Polne, defendants have essentially the same two objections. First, it is asserted that their actions were commenced with knowledge that several other class actions of the same nature were already pending, making Pupko's and Polne's suits unnecessary. Defendants, however, do not indicate how this circumstance renders these two plaintiffs inadequate representatives of the class; rather, defendants' appeal seems to be to this court's general power to supervise class actions in the interest of manageability.

But under the circumstances of this case, the desirability of simplicity is outweighed by the necessity for adequate legal representation, practically speaking, of the class. I decline to deprive the class of the resources of these two plaintiffs and their attorneys. Defendants' second objection is the plaintiffs' "inability and disinclination to supervise the prosecution of" their suits. Assuming this to be the case, however, Pupko and Polne remain adequate representatives of the class. There is no indication that either of these two suits was solicited by the attorneys: both plaintiffs stated in depositions that they contacted attorneys about the possibility of bringing suit after learning of the events at issue in these cases. Both plaintiffs are aware of the underlying facts at issue and the essence of their legal claim. Both are also aware of, and say they are able to shoulder, their financial responsibility as class representatives. And, of course, this court must approve any settlement of these actions that may be agreed to. Under these circumstances, that Pupko and Polne have a great deal of confidence in their attorneys is not disturbing to the court. *See Chevalier v. Baird Savings Association,* 72 F.R.D. 140, 146–47 (E.D.Pa.1976). Indeed, the defendants' suggestion that only individuals with the "ability" and desire to supervise their attorneys can be adequate guardians of class-wide rights would seriously undercut the usefulness of the class action device, especially in complex areas of the law such as securities regulation. *Cf. Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (stockholder derivative suit and the verification requirement of F.R.Civ.P. 23(b), now F.R.Civ.P. 23.1).[5]

In addition to the five original class plaintiffs, Howard Zimberg, by motion to intervene into the *Jay-Gro* action as a class plaintiff, also seeks to represent the class of allegedly aggrieved shareholders. That mo-

---

4. *Becton, Dickinson & Co. v. Sun Co.,* 78 Civ. 539, and *SEC v. Sun Co.,* 78 Civ. 1055.

5. It should be added parenthetically that a party's lack of supervision of his counsel's han-

tion is granted. As is the case with Wellman, the defendants do not raise any objection to Zimberg's abilities as a class representative, and I am not aware of any.

■ Consequently, these actions are suitable for class action treatment. The actions are certified as class actions in favor of the two classes defined above. Rosenfeld is certified as the class representative of the class of debenture holders, and Wellman, Pupko, Polne, Zimberg and Jay-Gro Trust are certified as the representatives of the class of common share owners. All five class actions are consolidated for all purposes.

### Designation of lead counsel

Counsel for the class actions have experienced difficulty in agreeing on the role that each firm will play in the prosecution of these actions. It is unnecessary to detail the conflicts. After discussion with the court, it is now settled that:

1) the firm of Kreindler & Kreindler is the lead counsel for the stockholder class, and liaison counsel for all the class actions;

2) the firm of Kaufman, Taylor, Kimmel & Miller is co-lead counsel for the stockholder class;

3) the firm of Pomerantz Levy Haudek & Block is the lead counsel for the debenture class;

4) in accordance with these roles, Kreindler & Kreindler will act as the primary spokesman for and coordinator with the court and the other parties on behalf of all the class actions, with the Pomerantz firm acting in those capacities for the debenture class if the interests of that class diverge from those of the stockholder class; and

5) it is understood by the court that although it is likely that Kreindler & Krein-

dler will do more work in this litigation than the other firms, the work to be done will be fairly distributed between all counsel in line with the general understanding that the Kaufman firm will do substantially more work than the firms of Rabin & Silverman and Philips & Mushkin, and more work than the Pomerantz firm (unless the litigation develops in a manner that requires significant efforts on the part of the Pomerantz firm in its role as lead counsel for the debenture class).

### Motion to strike

The SEC moves to strike the third affirmative defense of certain of the defendants ("Defendants")[6] in the SEC enforcement action[7] on the grounds that the defense asserted is insufficient as a matter of law. F.R.Civ.P. 12(f). The challenged defense states: "Prior to the filing of the complaint herein, the Commission failed to follow requisite and orderly administrative procedures and failed to afford these defendants an opportunity to make a submission before the Commission or officers thereof with respect to any matters raised in the complaint."

Defendants filed responsive papers to the instant motion in which they expounded the theory on which this third affirmative defense is based. It seems that the defense rests upon two separate foundations. First is the claim that the SEC, or its agents, committed abuses of a general nature in the conduct of their investigation so as to warrant dismissal of the instant complaint. Second is the claim that the SEC violated the due process clause of the Fifth Amendment, as well as its own regulations, see 17 C.F.R. § 202.5(c), by denying the Defendants an opportunity to present to the Commission their version of the facts and appli-

---

dling of his litigation, absent a clear showing of contrivance, could scarcely be considered a basis for judicial consideration of the bona fides of a non-class action law suit.

6. The defendants who have asserted this defense are: Salomon Brothers, F. Eberstadt &

Co., Inc., F. Eberstadt & Co. Managers & Distributors, Inc., Kenneth Lipper and Robert Zeller.

7. *SEC v. Sun Co.*, 78 Civ. 1055.

cable law underlying this litigation *prior to* the commencement of the instant suit. Although I harbor serious doubts as to the validity of either of these claims for the reasons set out below, I prefer to render decision after a hearing on the merits, rather than at this preliminary stage. Consequently, the motion to strike is denied.

▋ Motions to strike pursuant to Rule 12(f), F.R.Civ.P., are not generally favored. *Systems Corp. v. American Telephone & Telegraph Co.,* 60 F.R.D. 692, 694 (S.D.N.Y. 1973) (Pierce, J.); *Carter-Wallace, Inc. v. Riverton Laboratories, Inc.,* 47 F.R.D. 366, 367 (S.D.N.Y.1969) (Cannella, J.). "A motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law and is not granted if insufficiency of the defense is not clearly apparent or may be better determined in a hearing on the merits (citations omitted)." *Budget Dress Corp. v. International Ladies' Garment Worker's Union,* 25 F.R.D. 506, 508 (S.D.N.Y.1959) (Ryan, C. J.); *accord, Carter-Wallace, Inc. v. Riverton Laboratories, Inc., supra,* 47 F.R.D. at 367–68. Alternatively, it has been stated that "[a] motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." 2A Moore's Federal Practice ¶ 12.21, at 2437 (2d ed. 1975); *accord, Carter-Wallace, Inc. v. Riverton Laboratories, Inc., supra,* 47 F.R.D. at 367. It is with those standards in mind that I turn to an examination of the sufficiency of the Defendants' third affirmative defense.

*Claim of general abuses*

▋ The first element of the defense is the claim that the SEC has so abused its powers in the conduct of this investigation that a dismissal of the complaint is warranted. Thus, Defendants argue that the investigation was instigated as a result of political pressure rather than to enforce existing law; that agents of the Commission attempted to obtain information and documents from certain of the Defendants without consulting their counsel; and that the SEC decided in violation of its own regulations to turn over certain privileged papers to private litigants—papers which had been furnished to the Commission in the course of its private investigation. In making this argument, Defendants rely principally on three cases—none of which appear to lend support to their contentions.

Two of the decisions which Defendants cite, *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), and *SEC v. Brigadoon Scotch Distributing Co.,* 480 F.2d 1047 (2d Cir. 1973), *cert. denied,* 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974), concern the question of the showing government agencies must make in order to utilize their subpoena powers. Thus, in *United States v. Powell, supra,* the Court held that the Commissioner of the Internal Revenue Service ("IRS") "need not meet any standard of probable cause to obtain enforcement of his summons." 379 U.S. at 57, 85 S.Ct. at 255. Rather, "[h]e must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed . . . ." *Id.* at 57–58, 85 S.Ct. at 255. Similarly, in *SEC v. Brigadoon Scotch Distributing Co., supra,* the Second Circuit cited *Powell* and espoused the same standard of judicial inquiry with respect to the enforcement of SEC subpoenas. 480 F.2d at 1053–54.

Defendants rely principally on dicta in *Powell* and *Brigadoon* regarding the circumstances under which courts may refuse to enforce administrative subpoenas. As the Court stated in *Powell:*

"It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."

379 U.S. at 58, 85 S.Ct. at 255 (footnote omitted); *accord, SEC v. Brigadoon Scotch Distributing Co., supra,* 480 F.2d at 1056. Defendants argue that if administrative misconduct precludes the enforcement of a Commission subpoena directed at obtaining evidence necessary to commence an action, *a fortiori* such abuse precludes the granting of relief after an action has commenced. I cannot agree.

The import of the language in *United States v. Powell, supra,* and *SEC v. Brigadoon Scotch Distributing Co., supra,* upon which Defendants rely is that because of the expansive investigative power granted to certain governmental agencies, courts must be open to claims that these powers are being used to serve purposes other than those for which such authority was created. It is of little comfort to the individual who is being harassed by an agency for no other reason than, for example, his unpopular political beliefs, *cf. Lenske v. United States,* 383 F.2d 20, 27 (9th Cir. 1967) (Madden, J., separate opinion), that the agency will find nothing improper in the individual's conduct. Consequently courts may, in the rare case where such a showing is made, stop an investigation from going forward and thereby end the harassment by simply declining to enforce subpoenas. *See United States v. Church of Scientology,* 520 F.2d 818 (9th Cir. 1975). In the instant case, however, where the SEC claims to have found evidence of illegal conduct and is prepared to establish those claims at trial, dismissal of the complaint would go far beyond that which is suggested in *Powell* and *Brigadoon,* and would establish a rule that would require dismissal of an SEC enforcement action even in the face of overwhelming evidence of liability. To accept such an interpretation would be to disregard the strong public interest which such suits are designed to vindicate, *see SEC v. Kaplan,* 397 F.Supp. 564, 567 (E.D. N.Y.1975), or at least to relegate that interest to a subordinate position. Nothing in *Powell* or *Brigadoon* supports such a broad prophylactic rule.

Nor do I find Defendants' citation to the case of *General Motors Corp. v. United States,* 573 F.2d 936 (6th Cir. 1978), to be on point. That case dealt with a situation in which an IRS attorney, Meno Piliaris, had participated in an IRS investigation of General Motors ("GM"); had drafted a letter to the Justice Department recommending a grand jury investigation of GM; and, in that same letter, had stated that at an appropriate time IRS would seek an order of the court authorizing the disclosure to IRS of the information presented to the grand jury. Subsequently, while still on the IRS payroll, Piliaris was designated by the Acting Associate Attorney General to be a special attorney assigned to conduct the grand jury investigation of GM. A motion to disqualify Piliaris from participating in the grand jury investigation was then made by GM. The district court denied the motion, but the Court of Appeals for the Sixth Circuit reversed.

The *General Motors* court concluded that there was an appearance of impropriety in Piliaris' participating in the grand jury proceeding because of his prior affiliation with the GM investigation and his ongoing relationship with the IRS. Thus, for example, Piliaris might possess a unique interest in procuring an indictment against GM in order to justify his earlier recommendation to the Justice Department for a grand jury investigation. Moreover, as a result of his status as a special prosecutor Piliaris would have access to evidence concerning GM's tax returns that was before the grand jury, but to which the IRS would not otherwise be privy. For all these reasons, the court concluded that Piliaris had to be disqualified from further participation in any grand jury investigation and the pending grand jury investigation in which he had participated had to be terminated.

The *General Motors* decision stands for the well accepted proposition that the courts will not countenance a conflict of interest or an appearance of such a conflict in the tasks undertaken by members of the bar. *See, e.g., The Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225 (2d Cir. 1977) (private litigation); *General Motors Corp. v. City of New York,* 501 F.2d

639 (2d Cir. 1974) (private litigation); *United States v. Braniff Airways, Inc.,* 428 F.Supp. 579 (W.D.Texas 1977) (government litigation). It does not stand for the far broader proposition that *any* misconduct by an attorney in the conduct of a governmental investigation requires a dismissal of any complaint arising from that investigation. Such a reading is not suggested by the language of the *General Motors* case. Moreover, to interpret the case in such a manner would be again to disregard, or at least to subordinate, the strong public interest which these agencies are designed to vindicate. *See, e.g., SEC v. Kaplan, supra.* I decline to read the *General Motors* decision so broadly.

Only one decision, cited by neither party, appears to have directly addressed the question of the validity of the defense now asserted by Defendants. *SEC v. Jones,* 15 F.Supp. 321 (S.D.N.Y.), *aff'd on other grounds,* 85 F.2d 17 (2d Cir.) (per curiam), *cert. denied,* 299 U.S. 581, 57 S.Ct. 46, 81 L.Ed. 428 (1936).[8] In *Jones,* the defendant in an SEC action argued for dismissal of the complaint on the grounds that he was not fully informed of the nature of the Commission's investigation into his activities and, thus, the investigation infringed upon his constitutionally protected rights. The court summarily rejected the defendant's argument stating only that "[i]t is fantastic to say that because this suit was preceded by an investigation termed unlawful, the suit itself must be thrown out of court." *Id.* at 322.

In sum, I find no support in the cases relied upon by Defendants for their position that the instant complaint should be dismissed because of alleged general abuses on the part of SEC in the conduct of its investigation. In addition, the one case to address directly the Defendants' contention, though admittedly dated, summarily rejected it. *See SEC v. Jones, supra.* Nonetheless, this issue should not be determined on the present motion to strike—a motion of very limited scope. In other circumstances, courts have felt compelled to fashion judicial remedies in order to control the abuses of government officials. *See, e.g., Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (exclusion of evidence seized in violation of the Fourth Amendment); *United States v. Heffner,* 420 F.2d 809 (4th Cir. 1970) (exclusion of statements obtained in violation of agency regulations concerning *Miranda*-type warnings). Such rules "represent an accommodation of competing values." *United States v. Schwartz,* 176 F.Supp. 613, 615 (E.D.Pa.1959), *aff'd on other grounds,* 283 F.2d 107 (3rd Cir. 1960), *cert. denied,* 364 U.S. 942, 81 S.Ct. 461, 5 L.Ed.2d 373 (1961); *accord, United States v. Leonard,* 524 F.2d 1076, 1089 (2d Cir. 1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976). Defendants are, in effect, asking the court to weigh the societal interest in curbing governmental abuses in the conduct of agency investigations against the societal interest in protecting the investing public, and conclude that the latter must yield to the former. I have serious, perhaps immutable, doubts as to Defendants' contentions with respect to which of these two competing concerns must triumph. Those doubts are reinforced by the judicial reluctance to extend the reach of the exclusionary rule, even though the governmental abuses which that rule seeks to remedy are of a *constitutional* dimension. *See, e.g., United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). However, it is wiser to render a decision on this question in the context of a specific factual setting, rather than in the abstract, and after the arguments for and against the competing rulings have been fully explored, rather than summarily addressed, by the parties. Accordingly, the motion to strike insofar as it relates to claims of general SEC abuses is denied.

*Failure to afford the Defendants an opportunity to make a submission*

▮ The second element of Defendants' third affirmative defense is founded on the

---

**8.** *See also SEC v. Geotek,* [1974–75 Transfer Binder] Fed.Sec.L.Rptr. (CCH) ¶ 95,039 (N.D. Cal., March 28, 1975), where the court stated that in an SEC action the defenses of "lack of good faith in bringing, and lack of good grounds for, the SEC action" were of "questionable validity." *Id.* at 97,643, 97,646.

claim that they were denied an opportunity to present their position to the Commission prior to the commencement of this litigation, and that this denial was a violation of due process as well as a violation of the Commission's own regulations. At the outset, Defendants' due process claim must be rejected.[9] While the procedure of affording prospective defendants an opportunity to present their views to the Commission may well be a salutory one, *see* SEC, Report of the Advisory Committee on Enforcement Policies & Practices (1972); Lacy, *Adverse Publicity & SEC Enforcement Procedure,* 46 Ford.L.Rev. 435 (1977); Thomforde, *Negotiating Administrative Settlements in SEC Broker-Dealer Disciplinary Proceedings,* 52 N.Y.U.L.Rev. 237, 252–55 (1977), it is not a procedure which is constitutionally compelled. *SEC v. National Student Marketing,* 176 U.S.App.D.C. 56, 59, 538 F.2d 404, 407 (1976) (per curiam), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977). It must be remembered that all that is in issue here is the institution of suit by the government against the Defendants, not the substantive adjudication of their rights. Thus, before any sanction is imposed, the Defendants will be afforded the protections of a full trial. *See SEC v. National Student Marketing,* 68 F.R.D. 157, 165 (D.D.C.1975), *aff'd,* 176 U.S.App.D.C. 56, 538 F.2d 404 (1976) (per curiam); *cf. United States v. Goldstein,* 342 F.Supp. 661 (E.D.N.Y.1972) (no due process violation in failing to provide individual with IRS administrative conference prior to indictment). And, as the Court of Appeals for the District of Columbia Circuit stated in *National Student Marketing,* the Commission's enforcement procedure is one, *"already characterized by adequate due process safeguards."* 176 U.S.App.D.C. at 59,

538 F.2d at 407 (citation omitted) (emphasis added). Consequently the remainder of the instant discussion will focus only on whether a violation by the SEC of its own regulation, 17 C.F.R. § 202.5(c), could justify dismissal of the instant suit.

■ The regulation or "informal procedure" in question provides in pertinent part:

"Persons who become involved in preliminary investigations may, *on their own initiative,* submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff *in its discretion,* may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunctive proceeding."

17 C.F.R. § 202.5(c) (emphasis added). Defendants contend that the SEC staff either did not exercise the discretion vested in them by this provision or exercised it improperly by failing to inform counsel directly and properly of the fact that the Commission would entertain a submission, or of the information necessary to make a submission, in violation of the published regulation.

I have serious doubts as to whether a violation of this regulation could constitute a defense to the instant action. It has already been held that a violation of the internal directive concerning submissions to the Commission,[10] the predecessor to the

---

9. Defendants also make a fleeting reference to the equal protection clause while arguing that the SEC's failure to afford them an opportunity to make a submission violated their constitutional rights. Since counsel did not really address this argument, the court will not deal with it at this time.

10. That internal memorandum provided in pertinent part that:

"the Commission request[s] that the staff memoranda to the Commission recommending the particular action set forth separately any arguments or contentions as to either the facts or the law involved in the case which have been advanced by the prospective respondents and which countervail those made by the staff in its memoranda as a basis for the recommendation."

SEC Memorandum to all Division Directors and Office Heads, Re: Procedures Followed in

published regulation now in question, did not constitute a defense to an SEC enforcement action. *SEC v. National Student Marketing, supra,* 538 F.2d at 407. In so holding, the court focused on the nature of the internal directive and concluded that it was not intended to confer procedural rights on the prospective defendant. Thus, the court stated: "Had the Commission intended to establish a procedural rule which, if breached, would require dismissal of a complaint, we think it would have said so in language far clearer and more direct than that found in the 1970 Memorandum." *Ibid.* While I might not agree with the *Student Marketing* court that the SEC need *intend* that a breach of a procedural rule should result in the dismissal of a complaint in order for such a breach to have that effect, I find myself in complete accord with that court's sentiment that if the Commission were promulgating a rule designed to define the procedural rights of a prospective defendant to information related to the opportunity for making a submission to the SEC, the Commission "would have said so in language far clearer and more direct" than that found in the 1972 regulation. *See* 17 C.F.R. § 202.5(c). Furthermore, in adopting the present regulation, the Commission explicitly rejected a formalized procedure regarding submissions, opting instead for the informal process which had been previously operative. *See* SEC Securities Act Release No. 5310, [1972–73 Transfer Binder] Fed.Sec.L.Rptr. (CCH) ¶ 79,010, at 82,185. Thus, it may be inferred that the SEC did not intend to bestow new procedural rights upon prospective defendants by promulgating the regulation in question.

This tentative conclusion as to the insufficiency of this second prong of Defendants' third affirmative defense is further buttressed by the fact that prior to the imposition of any sanction on the Defendants, they will have an opportunity to present their legal and factual contentions to this court in a full trial on the merits. *See SEC v. National Student, supra,* 68 F.R.D. at 165, discussed *supra,* p. 352. Thus, that they were not afforded an opportunity to present their claims to the Commission *prior* to the institution of suit does not seem to warrant dismissal of the complaint. It is, in fact, this element of a full trial on the merits which renders cases, relied upon by Defendants, such as *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954),[11] inapposite. *SEC v. National Student Marketing, supra,* 68 F.R.D. at 164–65; *see United States v. Goldstein, supra,* 342 F.Supp. at 666. In *Accardi,* for example, the allegation was that the Board of Immigration Appeals violated its own regulations by failing to exercise *its* discretion in reaching a determination in a deportation proceeding because the Board simply relied on a list of "undesirables" tendered to it by the Attorney General. There, unlike the case at bar, the petitioner "did not have the protection of a full trial at the end of the plenary deportation procedure." *Ibid.*

Defendants' reliance on that line of cases which has invoked the exclusionary rule to bar the admission of evidence obtained in violation of IRS, *Miranda*-type regulations, though no constitutional violation was there involved, also appears misplaced. *See, e.g., United States v. Sourapas,* 515 F.2d 295

---

the Institution of Enforcement Proceedings (September 1, 1970), reprinted in *SEC v. National Student Marketing,* 68 F.R.D. 157, 165–66 (D.D.C.1975).

In adopting the present regulation, 17 C.F.R. § 202.5(c), the Commission explicitly rejected a more formalized procedure, stating that the object sought by allowing submissions could be obtained "where practicable, on a strictly informal basis *in accordance with procedures which are now generally in effect,*" SEC Securities Act Release No. 5310, [1972–73 Transfer Binder] Fed.Sec.L.Rptr. (CCH) ʼ 79,010, at 82,185 (emphasis added); the same procedures, the

violation of which was held *not* to be a defense to an SEC action in *SEC v. National Student Marketing,* 176 U.S.App.D.C. 56, 538 F.2d 404 (1976) (per curiam), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977).

11. Cases of a similar nature relied upon by Defendants include *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Sangamon Valley Television Corp. v. United States,* 106 U.S.App.D.C. 30, 269 F.2d 221 (1959).

(9th Cir. 1975); *United States v. Leahey,* 434 F.2d 7 (1st Cir. 1970); *United States v. Heffner,* 420 F.2d 809 (4th Cir. 1969). First, this Circuit has expressed doubts as to the reasoning and results of those decisions. *See United States v. Leonard, supra,* 524 F.2d at 1088–89 (2d Cir. 1975). Second, the regulations at issue in these cases were designed to delineate the rights of the prospective defendant; as indicated earlier, such is not the case here. *Cf. United States v. Lockyer,* 448 F.2d 417 (10th Cir. 1971); *United States v. Goldstein, supra.* Third, and most important, the regulations at issue in those cases affected the "taxpayer's post offense actions," *United States v. Goldstein, supra,* 342 F.Supp. at 666, in that statements which a taxpayer might not have made in the face of the mandated warnings could, absent the imposition of judicial sanction, be used against him at trial. Obviously, the failure to afford a prospective defendant an opportunity to make a submission to the SEC has no such effect on the prospective defendant's post offense conduct. *See SEC v. National Student Marketing Corp., supra,* 68 F.R.D. at 165; *cf. United States v. Goldstein, supra,* 342 F.Supp. at 666.

Although the SEC's position in its motion to strike this prong of Defendants' third affirmative defense seems well taken, I decline to grant the motion, for to do so would require a broad holding that under no circumstances could the violation of 17 C.F.R. § 202.5(c) result in the dismissal of an SEC complaint. In the instant case, unlike the *Student Marketing* decision, there appears to be a serious factual dispute as to whether there was, in fact, a violation of the regulation.[12] The papers submitted by the parties suggest that the Defendants were informally notified concerning their opportunity to make a submission to the Commission, thus complying with the " 'substance and spirit' " of the regulation. *Cf. United States v. Jobin,* 535 F.2d 154, 157 (1st Cir. 1976) (compliance with regulations concerning *Miranda*-type warnings). Of course, I cannot

address the underlying facts in determining this motion to strike. Therefore, rather than making a broad ruling in the abstract, the court will defer its determination as to the validity of this defense until the underlying facts are presented at trial. Accordingly, the motion to strike is denied.

*Conclusion*

To summarize, the motions for class certification and to intervene are granted. The question of lead counsel is settled as detailed in this opinion. The class actions are consolidated for all purposes. And the SEC's motion to strike is denied.

IT IS SO ORDERED.

---

12. *Compare* Memorandum of Points and Authorities in Support of Motion to Strike, pp. 3–5, n.2 *with* Affidavit of Edmund Kerr in Opposition to Plaintiff's Motion to Strike (May 12, 1978), p. 6.