**In re METLIFE DEMUTUALIZATION LITIGATION.**

No. CV–00–2258.

United States District Court,
E.D. New York.

July 19, 2005.

Jared B. Stamell, Stamell & Schager, L.L.P., New York City, for Plaintiffs.

Bruce E. Yannett, Carl J. Micarelli, Debevoise & Plimpton, Duncan J. Logan, New York City, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Before this Court is class action Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure ("Rule") 23(a), (b)(2) and (b)(3), in their consolidated action against Defendant Metropolitan Life Insurance Company ("MetLife").

According to Plaintiffs' Second Amended Complaint, MetLife allegedly violated Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. 771(a)(2), and Section 10b of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and its correlative Rule 10b–5, 17 C.F.R. § 240.10b–5. MetLife opposes class certification.

This Court heard oral argument on this motion on May 6, 2005.

For the following reasons, Plaintiffs' motion is **GRANTED**.

**1.** The first was a motion to dismiss Plaintiffs' original Complaint under Section 12(a)(2), and the second, was a motion to dismiss Plaintiffs' Second Claim for Relief under Section 10b in their Amended Complaint; both were denied.

**2.** *See* Court Order of August 3, 2000, appointing lead plaintiffs and approving lead counsel.

## Background

### A. *Factual Summary*

A thorough recitation of the facts may be found by reading this Court's previous decisions in this matter, *In re MetLife Demutualization Litig.*, 156 F.Supp.2d 254 (E.D.N.Y. 2001) and *In re Metlife Demutualization Litig.*, 322 F.Supp.2d 267 (E.D.N.Y.2004).[1] Nevertheless, a few essential facts bear repeating.

In April, 2000, MetLife changed from a mutual life insurance company to a stock life insurance company, a process known as demutualization. Lead Plaintiffs[2] Darren F. Murray, Mary A. Devito, Michael A. Giannattasio, Kevin L. Hyms, Harry S. Purnell, III, and Kathy Vanderveur claim that prior to the February, 2000 vote that approved the demutualization, MetLife issued to each policyholder a Prospectus[3] which contained material misrepresentations—made through misstatements and omissions—about the effect the demutualization would have on participating policyholders rights. Participating policyholders are those former MetLife policyholders who paid premiums that were intentionally priced higher in order to create a surplus. That surplus constituted a fund from which MetLife would return to participating policyholders the overcharges together with any accrued interest as a dividend payment. The demutualization extinguished the participating policyholders' rights to these dividend payments (with the exception of dividends paid out of a closed block of designated assets) in exchange for the rights as stockholders in a stock company.

Plaintiffs allege in their Consolidated, Amended, and Supplemental Class Action Complaint filed on November 18, 2002 ("Amended Complaint") that as a result of the demutualization, and in exchange for their rights as participating policyholders, they "received only 54 cents on the dollar for

**3.** The "Prospectus" is a collection of printed materials sent by MetLife to its policyholders in the fall of 1999. It includes "The Chairman's Letter," "Ballot and Personalized Information Cards," "Read Me First" brochure, "Policyholder Information Booklet Part One" and "Policyholder Information Booklet Part Two." (Pls.' Mem. at 1.)

their policies, that dividends were reduced, and that MetLife engage[d] in fraud by not stating this in the [Prospectus]." *In re Metlife Demutualization Litig.*, 322 F.Supp.2d at 269. Specifically, Plaintiffs allege that Met-Life made four misrepresentations in the Prospectus: (i) omitting to state that the actuarial method used to calculate policyholders' contributions to MetLife's surplus arrived at a value of $15,300,000,000, far higher than the $8,400,000,000 in stock that these policyholders received as compensation; (ii) omitting to state that MetLife's method of reorganization, an exchange of policies for stock with the right to elect cash, as opposed to an exchange of policies for cash with the right to elect stock, was chosen for the benefit of MetLife and not the policyholders, because Plaintiffs would allegedly have received double the compensation under the latter method; (iii) omitting to state that policyholders would surrender their right to annual dividends from their contributions to Met-Life's surplus; and (iv) misstating that reasonable dividends would "continue to be paid as declared," when in Plaintiffs' view the assets allocated to pay dividends had been limited. *Id.* at 268–69.

Plaintiffs now seek to certify as a class,

all persons who were participating Metropolitan Life Insurance Co. ("MetLife Co.") policyholders on or about September 28, 1999, for whom MetLife Co. calculated a positive actuarial equity share ("participating policyholders") and whose rights as participating policyholders were exchanged for shares of stock in MetLife Co., pursuant to defendants' plan of demutualization ("Demutualization Plan" or "Plan"), excluding defendants, their officers, directors, subsidiaries and affiliates (the "Class").

(Am.Compl. ¶ 12.)

## B. *Rules*

As a threshold issue, district courts must be able to identify the putative class membership. *Daniels v. City of N.Y.*, 198 F.R.D. 409, 414 (S.D.N.Y.2001) (holding that "the class must be sufficiently definite" and "clearly defined."). In this case, as described above, the class membership is a clearly defined and ascertainable group and will not require this Court to make a further, time consuming inquiry in order to discover their identity. *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 207 (E.D.N.Y.2005).

### 1. *Rule 23(a)*

Rule 23(a) of the Federal Rules of Civil Procedure provides that a class may be certified only if the following conditions are met:

if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

These four conditions are commonly referred to as numerosity, commonality, typicality, and adequacy. *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999), *cert. denied*, 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000). The party seeking class certification bears the burden of proving that each of these four conditions have been met. 5–23 *Moore's Federal Practice*—§ 23.83 (3d ed.2005).

In the Second Circuit, district courts are required to analyze rigorously whether the proposed class satisfies the Rule 23(a) criteria, but such analysis does not require or permit an evaluation of the relative strength of the merits of the case. *Caridad*, 191 F.3d at 291; *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir.2001); *see generally* Geoffrey P. Miller, *Review of the Merits in Class Action Certification*, 33 Hofstra L. Review 51, 63 (2004) (discussing the varying degrees of inquiry into the merits of claims permitted by circuit courts ruling on motions to certify a class). This is true even in a securities fraud action, where the four conditions of Rule 23(a) "are to be construed liberally" by district courts. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991). Instead, plaintiffs are required to "make some showing" that the four conditions are met.

*In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 83 (S.D.N.Y.2004). Finally a court "must assume the truth of the allegations in the pleadings when considering the propriety of certification." *Jones v. Ford Motor Credit Co.*, No. 00–8330, 2005 U.S. Dist. LEXIS 5381, at *18, 2005 WL 743213, at *5 (S.D.N.Y. March 31, 2005) *citing Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661, n. 15 (2d Cir.1978); *see also Vega v. Credit Bureau Enters.*, No. 02–1550, 2005 U.S. Dist. LEXIS 4927, 2005 WL 711657 (E.D.N.Y. March 29, 2005).

In *In re Initial Pub. Offering.*, 227 F.R.D. at 84, United States District Judge Scheindlin wrote that "under binding case-law in this Circuit, a district court *may not simply* accept the allegations of the plaintiffs' complaint as true." (emphasis added). As such, district courts are required to critically assess any evidence in the "form of, for example, expert opinions, evidence … or the uncontested allegations of the complaint," supplied by plaintiffs in support of their motion to certify. *Id.* at 84–85. This critical assessment—the "rigorous analysis" requirement—is focused on the proffered evidence and not on the claims themselves, the merits of which are not to be determined in a Rule 23 motion. *See In re Visa Check/MasterMoney*, 280 F.3d at 135 (holding that the class certification decision is not an "occasion for examination of the merits of the case.").

The Parties here do not disagree about the appropriate standard, although it comes as no surprise that Plaintiffs emphasize that district courts must accept the allegations in the Amended Complaint as true (Pls.' Mem. at 2.), whereas MetLife reminds this Court that the putative Class may not be certified until a "rigorous analysis" shows that Rule 23's conditions have been met. (Def.'s Opp. Mem. at 4.)

### i) Numerosity

■ The question of numerosity is undisputed. (May 6, 2005 transcript at 3.) Plaintiffs, who approximate a putative class of 8.4 million (*Id.*), are entitled to make reasonable inferences as to the number of class members using those facts currently available.

*In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y.1996). Although the exact number of class members is unknown, this uncertainty will not bar class certification. *In re Frontier Ins. Group Secs. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y.1997).

### ii) Commonality

■ Plaintiffs also satisfy the commonality condition. Rule 23(a)(2) requires that plaintiffs demonstrate that there be questions of law or fact common to the class. *In re Laser Arms Corp. Sec. Litig.*, 794 F.Supp. 475, 494 (S.D.N.Y.1989). Although Rule 23(a)(2) uses the plural of the word "question," the commonality requirement is satisfied as long as the proposed class members shares at least one common question of law or fact. *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 290 (2d Cir.1992); *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 126 (E.D.N.Y.2003).

In this case, Plaintiffs allege in their Amended Complaint five issues of law or fact which affect all class members:

i. whether Defendants violated § 12(a)(2) of the Securities Act

ii. whether Defendants violated § 10(b) of the Exchange Act

iii. whether the [Prospectus] contains untrue statements of material fact and/or omits from disclosure material facts necessary in order to make statements in the [Prospectus] not misleading;

iv. whether Defendants made untrue statements of material fact and omitted to disclose material facts intentionally with conscious disregard of the truth or recklessly;

v. whether class members have been injured and, if so, the appropriate remedy, including damages and the amount thereof, and/or rescission.

(Am.Compl. ¶ 16)

Securities fraud cases by their nature usually allege a common course of conduct sufficient to satisfy Rule 23(a)(2). *Fisher v. Plessey Company Limited*, 103 F.R.D. 150, 154

(S.D.N.Y.1984) ("A 10b–5 action obviously raises questions of fact and law common to the claims of all potential class members, particularly with respect to the elements of materiality and scienter."). Moreover, "where all the class claims arise out of publicly announced, allegedly false statements, questions of law and fact are virtually assured . . . ." *In re Arakis Energy Corp. Sec. Litig.*, No. 95–3431, 1999 U.S. Dist. LEXIS 22246, at *19, 1999 WL 1021819, at *5 (E.D.N.Y. April 27, 1999).

Plaintiffs argue that the commonality condition is satisfied on the ground that Met-Life's misrepresentations coalesced in the same set of documents, i.e., the Prospectus, sent to all Class members. (Pls.' Opp. Mem. at 13.) This Court finds that the common questions of law and fact cited by Plaintiffs satisfy the commonality condition. MetLife does not oppose the argument that the Rule 23(a)(2) commonality condition is satisfied, but instead reserves its most vociferous opposition on the related and more difficult question of predominance under Rule 23(b)(3).

### iii) Typicality

The typicality condition "is satisfied if the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members." *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 241 (E.D.N.Y.1998). Similarly, "[b]y advancing their own interests, plaintiffs will advance the interest of the class." *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (E.D.N.Y.1981). Also, "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993).

■ In this case, Plaintiffs assert that, as participating policyholders, they and each putative class member suffered damages as a result MetLife's allegedly misleading Prospectus. (Pls.' Mem. at 15.) At the time of the demutualization, participating policyholders exchanged their membership rights for stock, which in their case (as opposed to non-participating policyholders) was more than the ten shares that constituted the fixed component of the stock allocation received by all MetLife policyholders. Participating policyholders received more than ten shares because as policyholders with a positive actuarial equity share, they contributed to, and received dividends from, MetLife's surplus before the demutualization. After the demutualization, MetLife furnished additional shares to the Plaintiffs and the putative Class on a *pro rata* basis linked to the amount of the participating policyholder's individual contribution to MetLife's surplus. Plaintiffs argue that they and the proposed class members suffered damages because MetLife provided non-participating policyholders essentially the same fixed share allocation. (Pls.' Mem. at 15.) Furthermore, Plaintiffs allege that the Prospectus failed to make clear that these results would follow when the demutualization was approved. Sharing the same legal theory and having been affected by the same course of events, Plaintiffs contend that they have satisfied the typicality condition. This Court agrees.

MetLife's arguments contesting the typicality condition are not persuasive.

MetLife contends that certain of the named Plaintiffs cannot satisfy the typicality condition because as potential class representatives, they are subject to unique defenses. (Def.'s Opp. Mem. at 19–20.) The presence of unique defenses undermines typicality in that representative members who are subject to unique defenses may threaten to become "the focus of the litigation [and] divert attention from the substance of the basic claim." *Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981), *aff'd in relevant part*, 702 F.2d 400, 403 (2d Cir.1983).

MetLife alleges that practically all of the named Plaintiffs are subject to unique defenses because it is highly questionable (if not impossible) that the named Plaintiffs relied on the Prospectus before placing their votes. (Def.'s Opp. Mem. at 19.) Specifically, MetLife alleges that Plaintiffs Mary DeVito and Darren Murray allegedly did not vote in favor of demutualization; Michael Giannattasio and Kevin Hyms claim that prior to voting they had concerns about whether

MetLife had brought forth all relevant facts in the Prospectus; and Harry Purnell testified that he is unsure whether he relied on the alleged misstatements and omissions in the Prospectus. (*Id.* at 19–20.)

MetLife cites in support of this argument, several securities fraud cases in which the proposed class representative's lack of reliance helped to defeat Rule 23(a)(3) typicality. The circumstances of those cases, however, are inapposite to the facts of this case. For example, in *Miller v. Grigoli*, 712 F.Supp. 1087 (S.D.N.Y.1989), the plaintiff—a lawyer and an investment banker—alleged that the defendant tricked him into investing in a limited partnership organized for the purpose of earning money through various real estate acquisitions. Mr. Miller claimed that he relied on certain documents produced by the defendants which contained omissions that duped him into making the investment. *Id.* at 1093. This, Mr. Miller alleged, was a violation of Rule 10b–5. *Id.* The court, *after* a trial on the merits, decided that Miller had opportunities to learn about the alleged omissions from other materials sent to him in connection with the limited partnership and so therefore he could not show that the defendants intended to defraud him. *Id.*

MetLife attempts to use this case as an example of how Plaintiffs Michael Giannattasio, Kevin Hyms, and Harry Purnell are subject to unique defense because at trial they may be found to not have relied on the Prospectus. For this Court to determine at this stage of the litigation whether material information was left out of the Prospectus, and what sources of information, if any, the Plaintiffs relied on before voting (or not voting), requires an impermissible inquiry into the merits of the Plaintiffs' claims which this Court will not do. *Re Buspirone Patent Litig.*, 210 F.R.D. 43, 56 (S.D.N.Y.2002) (holding that when deciding whether to certify a class, courts should refrain from reaching the merits of the case as doing so may "subject some parties to adverse merits rulings without the benefit of the rules and procedural safeguards that traditionally apply in civil trials.").

Similarly, during oral argument, MetLife's counsel urged this Court to re-read *Cohen v. Laiti*, 98 F.R.D. 581 (E.D.N.Y.1983) (Platt, J.) as support for their argument that affirmative evidence of non-reliance by one of the class representatives would defeat certification. (Tr. at 16.) *Cohen* is inapplicable to the present case. In *Cohen*, this Court denied class certification on the ground that Mr. Cohen faced unique defenses as the proposed class representative. 98 F.R.D. at 584. Mr. Cohen alleged that he purchased defendant's stock in reliance on defendant's 10–K statement, but then later testified that he decided to purchase the stock on the advice of his stockbroker. *Id.* This Court decided that Cohen's lack of credibility gave rise to unique defenses that threatened to overshadow and preclude consideration of the merits of Cohen and the putative class's claim. *Id.* The issue of reliance was a secondary consideration. *Id.* at 583 ("We hold that these inconsistencies, *standing alone,* provide a sufficient basis for denial to the plaintiff of class representative status.") (emphasis added).

MetLife provides no reason for this Court to doubt the credibility of any of the named Plaintiffs. There is no danger, therefore, that the integrity of any one of the named Plaintiffs will become the focus of the litigation. Rather, it is clear that the question emerging out this litigation that needs to be decided on the merits is whether the Prospectus served to mulct the Plaintiffs and the class they seek to represent as a result of its various claimed misrepresentations and omissions.

In a related argument, MetLife alleges that the Plaintiffs' assertion that they may rest on a presumption of reliance is improper where certain named Plaintiffs could not have relied on the Prospectus as they did not vote. (Def.'s Opp. Mem. at 19.); *See Lewis v. McGraw*, 619 F.2d 192, 195 (2d Cir.1980) (holding that "where no reliance was possible under any imaginable set of facts, such a presumption would be illogical in the extreme."). Contrary to MetLife's assurances, the question of whether certain of the named Plaintiffs did not vote is open to debate, and thus denying Plaintiffs the benefit of the presumption of reliance at this time is not appropriate. For instance, MetLife asserts

that Mary Devito did not vote. (Def.'s Opp. Mem. at 19.) Plaintiffs point out, however, that MetLife also maintains that other factors independent of the alleged misrepresentations and omissions influenced Ms. Devito's vote. (Stammell Aff. ¶ 3; Def.'s Opp. Mem. at 11.) MetLife cannot have it both ways.

### iv) Adequacy

Plaintiffs must demonstrate that the proposed Class representatives "will fairly and adequately protect the interests of the class" in order to satisfy Rule 23(a)(4). Fed. R.Civ.P. 23(a)(4). "Adequate representation is a twofold requirement: class counsel must be qualified and able to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members." *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 127 (E.D.N.Y.2003) (Platt, J.). Recently, however, the two part adequacy test underwent a significant change. *Jones v. Ford Motor Credit Co.*, No. 00–8330, 2005 U.S. Dist. LEXIS 5381, at *56–57, 2005 WL 743213, at *17–18 (S.D.N.Y. March 31, 2005). The Advisory Committee Notes to the 2003 Amendments to Federal Rule 23(g), effective December 1, 2003, state that "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision." 28 U.S.C.A. § 23 (2005 Supp. at 79). As such, the following discussion is properly focused on the adequacy of the proposed class representatives, and not the qualifications and abilities of their counsel.

■ Plaintiffs contend that they possess no interests that conflict with those of the proposed Class. (Pls.' Mem. at 17.) MetLife argues, however, that Plaintiff Darrell Murray is not an adequate class representative because of his position as the Information Technology Director for Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio"), one of the law firms representing the Plaintiffs. (Def.'s Opp. Mem. at 21.)

Courts in this circuit have refused to certify cases involving a potential conflict of interest where attorneys sought to serve as both a class representative and counsel, *see, e.g.,* *Lowenschuss v. Bluhdorn*, 613 F.2d 18, 20 (2d Cir.1980), and where an employment relationship between the class representative and plaintiffs' counsel exists. *See, e.g., In re AM International, Inc. Sec. Litigation*, 108 F.R.D. 190 (S.D.N.Y.1985). Nevertheless, no bright line rule exists covering these kinds of employee/plaintiff to employer/class counsel relationships. *Brick v. CPC International, Inc.*, 547 F.2d 185, 186 (2d Cir.1976) ("On the issue of class representation, district courts in this circuit have expressed concern over the propriety of a law partner relationship between the attorney for the class and its representative, but they have not invariably refused to certify the class when the relationship exists.").

Nearly thirty years ago, this Court held that a father represented by his lawyer son did not defeat the father's ability to be an adequate representative of the class on the ground that defendants could not demonstrate that the plaintiff would share in any legal fee earned by his son. *Fischer v. International Tel. & Tel. Corp.*, 72 F.R.D. 170, 173 (E.D.N.Y.1976) (Platt, J.). This decision was guided, among other things, by a review of the relevant case law at the time. This Court decided "that the touchstone for denial of class action status in each case (with one exception) is that the plaintiff might have an interest in the legal fees that the attorney may ultimately seek." *Id.* (citation omitted). The passage of time has not weakened the utility of this legal fee test in judging the adequacy condition under Rule 23(a)(4). *See Weil v. Long Island Sav. Bank, FSB*, 200 F.R.D. 164, 173 (E.D.N.Y.2001) (Platt, J.). MetLife avers that Mr. Murray shares an interest in the legal fees that may be earned by his employer if a favorable outcome from this litigation might positively affect Mr. Murray's discretionary bonus. (Def.'s Opp. Mem. at 22.) Mr. Murray testified that the amount of his bonuses has ranged between 10 to 25 percent of his salary. (Murray Dep. 46:15–16) Although Mr. Murray may not directly share in the legal fees recovered by Berman DeValerio, there is little doubt that he has an interest in his employer's financial success as his base salary and discretionary bonuses are linked to its revenue. Accord-

ingly, Mr. Murray is not an adequate representative of the proposed class on the ground that "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gary Plastic Packaging,* 903 F.2d at 179; *Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1375 (11th Cir.1984) (finding that where a plaintiff is an employee of firm acting as class counsel, he likely is more "interested in maximizing the return to his employer" and securing his "future employment" than he is about the welfare of the unnamed class members).[4]

■ MetLife also argues that there is a potential conflict of interest between the Plaintiffs and the proposed Class members in that not all lead Plaintiffs or proposed Class members will recover under all claims. (Def.'s Opp. Mem. at 22.) In sum, and based on their own calculations, MetLife contends that policyholders who received fewer than 64 shares at the time of the demutualization will not recover on any theory of damages. (*Id.* at 23.)

Plaintiffs respond that there are three theories of recovery pleaded in the complaint: fraud, disgorgement, and rescission, and that all Proposed class members will recover under at least two of these three theories of recovery. (Pls.' Reply Mem. at 8.) Denying certification at this stage in the litigation because a portion of the proposed class members may not recover on a particular theory of damages, especially when other means of recovery are available, eviscerates the principle that Plaintiffs' are required only to make some showing of adequacy for class certification. *In re Visa Check/MasterMoney,* 280 F.3d at 145 (holding that speculative conflict should be disregarded at the class certification stage). Determining which theory of damages—if any—will prevail at trial in a class action suit is mere speculation at best.

Furthermore, Plaintiffs allege that any loss of rights or share value for the Class as a whole arose out of the 2000 demutualization, which the Class overwhelmingly approved subsequent to the issuance of the same, allegedly misleading, Prospectus. (Pls.' Reply Mem. at 7.) Whichever theory of damages Plaintiffs choose to stand on at trial, the gravamen of each theory is linked to the same common set of facts: the allegedly misleading Prospectus mailed by MetLife to all members of the putative Class. "Thus, given that the threshold issues will be the same, it is nothing but speculation that plaintiffs' interests conflict with the interests of the class in this respect." *Walsh v. Northrop–Grumman Corp.,* 162 F.R.D. 440, 447 (E.D.N.Y.1995) (Platt, Ch. J.).

2. *Rule 23(b)(1)(B)*

Having satisfied the four conditions under Rule 23(a), Plaintiffs must also show that the requirements under Rule 23(b) are met. Plaintiffs seek certification for their Section 12 claim pursuant to Rule 23(b)(1)(B).

Rule 23(b)(1)(B) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of . . .

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .

Fed.R.Civ.P. 23(b)(1)(B).

■ The application of Rule 23(b)(1)(B) to securities fraud cases is generally disfavored.

---

4. Plaintiffs cite in defense *Wellman v. Dickinson,* 79 F.R.D. 341 (S.D.N.Y.1978) in which a plaintiff who was an associate with one of the firms representing the class was found to not have a disqualifying conflict of interest. (Pls.' Reply Mem. at 9.) There are significant differences between the two cases, however. In *Wellman,* the associate was not just a plaintiff, but a trustee for one of the plaintiffs. Considering this fact, the court decided that as a trustee the associate "labor[ed] under legally and emotionally imposed fiduciary obligations which can be expected to act as an additional restraint upon [him] putting the interest of his employer above the interest of the class he represents." 79 F.R.D. at 347. Mr. Murray is not acting in the capacity of a trustee and therefore does not have the "additional restraint" as contemplated by the court in *Wellman.*

*Crasto v. Estate of Kaskel,* 63 F.R.D. 18 (S.D.N.Y.1974). The exception is when plaintiffs are seeking damages from a limited fund. *See, e.g., In re Drexel Burnham Lambert Group,* 960 F.2d 285, 292 (2d Cir.1992). The prosecution of separate actions in limited fund scenarios creates the risk that, should the first plaintiff prevail, subsequent litigants may have to draw from an empty well. *Id.* Consequently, class certification pursuant to Rule 23(b)(1)(B) is appropriate to preserve the defendant's limited pool of funds in order to ensure the greatest recovery for each member of the putative class. *Id.*

■ This case does not involve a limited fund. Plaintiffs here are seeking equitable relief in the form of a rescission. (Am. Compl. ¶¶ 96, 99.) This Court previously described what rescissory damages might look like in the event Plaintiffs prevail: "If a plaintiff still owns [MetLife stock], he is entitled to rescission and may recover the consideration paid for the securities plus interest less any amount of income he received." *In re MetLife Demutualization Litig.,* 156 F.Supp.2d at 269. This description fits the classic form of rescissory damages. *See, e.g., Wigand v. Flo–Tek, Inc.,* 609 F.2d 1028, 1035 (2d Cir.1979) ("If plaintiff owns the stock, he is entitled to rescission but not damages. If plaintiff no longer owns the stock, he is entitled to damages but not rescission."). Under this view of rescissory damages in the Section 12(a)(2) context, adjudicating each of the Plaintiffs' claims individually would not be "incongruous, inconsistent and damaging for all parties," as Plaintiffs contend. (Pls.' Mem. at 19.) MetLife is correct that damages or rescission can be awarded to some Class members, but not others. (Def.'s Opp. Mem. at 18)

Plaintiffs counter that this Court is free "to shape the remedy" since rescission is a form of equitable relief. (Pls.' Reply Mem. at 5.) Plaintiffs suggest that this Court treat the demutualization like a merger and revert MetLife back to its privately held past. (Pls.' Mem. at 18–19.)

This Court agrees with Plaintiffs that in a merger scenario, "[i]t would necessarily follow that a decision rescinding the merger would be conclusive of the rights of all other class members on this point." *Richardson v. Hamilton Int'l Corp.,* 62 F.R.D. 413, 421 (E.D.Pa.1974). The issue then, is whether there is a risk—as defined by Rule 23(b)(1)(B)—that in this case, this Court could somehow undo the demutualization and do so in a manner that would create discordant results if the proposed class is not certified. *Robertson v. National Basketball Asso.,* 389 F.Supp. 867 (S.D.N.Y.1975) ("[Rule]23(b)(1)(B) seeks to avoid the risk that separate adjudications might impair the interests of other class members.").

Plaintiffs have not, however, demonstrated that such a risk exists to the extent that certification is required under Rule 23(b)(1)(B). The Plaintiffs provide no further analysis or reasoning to support the notion that the demutualization could be reversed, other than to cite to *Richardson,* the Eastern District of Pennsylvania's merger case. The merits of Plaintiffs' *suggestion* that this Court could somehow reverse the demutualization calls for unnecessary and inappropriate speculation. This Court will not do the Plaintiffs thinking for them. Class certification of Plaintiffs' Section 12(a)(2) claim under Rule 23(b)(1)(B) as such is therefore denied, but survives at this juncture under Rule 23(b)(3).

### 3. *Rule 23(b)(3)*

Rule 23(b)(3), on the other hand, provides fertile ground for Plaintiffs' pursuit of certification of its Rule 10b–5 and Section 12(a)(2) claims:

> (b) An Action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ... (3) the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3).

MetLife argues generally that both the putative class's Rule 10b–5 and Section 12 claims may not be certified under Rule

23(b)(3) on the grounds that individual issues of reliance predominate the suit, and further, that Plaintiffs may not proceed on the ground that there exists a class-wide presumption of reliance.[5] (Def.'s Opp. Mem. at 5–17.) Plaintiffs disagree and contend that because the Amended Complaint centers around the alleged misrepresentations and material omissions of the Prospectus, this Court is free to apply the presumption of reliance typically applied in Rule 10b–5 cases. (Pls.' Reply Mem. at 2–3.) Additionally, Plaintiffs argue that for its Section 12(a)(2) claim, the lack of knowledge of the omitted material facts in the Prospectus is a common issue for all prospective class members. (*Id.* at 3–4.)

Concerning its Rule 10b–5 claim, Plaintiffs rely on the rebuttable presumption established by the U.S. Supreme Court in *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), and further developed by this Circuit in *Handwerger v. Ginsberg,* 519 F.2d 1339, 1341–42 (2d Cir.1975), to refute MetLife's claim that individual issues of reliance will predominate this litigation. In *Affiliated Ute,* the Court held that in cases "involving *primarily* a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material . . . ." *Affiliated Ute,* 406 U.S. at 155, 92 S.Ct. 1456 (emphasis added). Consequently, the requirement of proving individual reliance has been eliminated, at least as to claims of fraudulent omissions brought under § 10(b) and Rule 10b–5. *Id.* at 153, 92 S.Ct. 1456; *Starr v. Georgeson S'holder, Inc.,* 412 F.3d 103, 109 (2d Cir.2005); *Pellman v. Cinerama, Inc.,* 89 F.R.D. 386, 387 (S.D.N.Y. 1981) ("[C]ourts have consistently refused to deny class certification in omission cases because of purported nonreliance.").

Plaintiffs further confute MetLife's reliance argument by asserting that this case is in effect a group voting scenario wherefore individual reliance is of no consequence. (Pls.' Reply Mem. at 6; Tr. at 18–20.) Plaintiffs' group voting argument is appropriate in

the securities fraud context where the essential claim rests on the theory that MetLife withheld material information from the Prospectus. Relying heavily upon the Second Circuit's opinion in *Herbst v. International Tel. & Tel. Corp.,* 495 F.2d 1308 (2d Cir. 1974), Plaintiffs contend that materiality and not individual reliance is relevant to class certification in Rule 10b–5 claims. In *Herbst,* the Court of Appeals held that in a group voting context involving securities fraud, where the materiality of an omission is at issue, individual reliance is irrelevant because "plaintiff was damaged only if significant numbers of shareholders might have acted differently if they had known the truth." *Id.* at 1316. In other words, applying *Herbst* analysis to the facts of this case, it is reasonable to assume that Plaintiffs and the proposed class members may have voted "no" had they known that as participating shareholders they would, for example, only receive approximately 54 cents on the dollar in exchange for their policies and would forgo future dividend rights. MetLife might then have been motivated to offer more favorable terms in order to secure Plaintiffs' votes in favor of demutualization. In sum, in order to establish causation under Rule 10b–5, a plaintiff need only prove that an omission was material and not that she relied upon the missing information in making her decision.

Plaintiffs' case involves primarily a failure to disclose: i.e., Plaintiffs allege three material omissions in MetLife's Prospectus (as well as an affirmative representation concerning the value of future dividend payments). As such, application of the *Affiliated Ute* presumption of reliance is appropriate in this case. This Court arrived at a similar conclusion in another class action suit involving group voting and decided that even though proof of reliance is vital to a Rule 10b(5) claim, "courts determining whether common questions predominate [for purposes of Rule 23(a)(3) ] 'focus on the liability issue as opposed to individual questions such as reliance and damages.' " *Walsh,* 162 F.R.D.

---

5. MetLife correctly points out that Plaintiffs may not rely on the "fraud on the market" presumption of reliance because no efficient market for MetLife's shares existed at the time of the demutualization vote. (Def.'s Opp. Mem. at 6–8.); *See In re Livent Noteholders Sec. Litig.,* 211 F.R.D. 219, 221 (S.D.N.Y.2002).

at 446 (*quoting Fisher,* 103 F.R.D. at 155). Moreover, the question of materiality alone has been found to give rise to a common issue to all members of the proposed class. *Id.* "If that common nucleus of operative facts forms the central issue in the case, even if individualized issues of proof are present, the predominance hurdle will have been cleared." *Dornberger v. Metropolitan Life Ins. Co.,* 182 F.R.D. 72, 77 (S.D.N.Y.1998).

▮ Additionally, Plaintiffs persuasively argue that as to its Section 12(a)(2) claim, MetLife's conclusion that individual trials will be necessary to determine the extent of each class member's knowledge of the omitted facts at the time of the vote, is without merit. (Def.'s Opp. Mem. at 16.) Unlike the myriad of Rule 10b–5 cases cited by MetLife in which plaintiffs learned (and had the opportunity to learn) information that would have alleviated or mitigated any damages resulting from an alleged fraud (or, conversely, those cases in which reliance was deemed to be impossible),[6] in this case Plaintiffs maintain that only MetLife had knowledge of the omitted facts. (Pls.' Reply Mem. at 3.) As such, a common issue effecting the proposed Class clearly presents itself. That is, whether MetLife knowingly withheld material facts from the Prospectus in an effort to gain votes in support of the demutualization. The effect on the voter, then, is a class wide phenomenon:

> Because the materiality test is concerned not with whether the investment decision of a particular individual would have been affected, but only "whether a prototype reasonable investor would have relied," … the standard for resolving the materiality issue is obviously objective and general rather than subjective and individual. Thus, for purposes of this inquiry, materiality presents an issue common to all members of the proposed class.

*Fisher v. Plessey Co. Ltd.,* 103 F.R.D. 150, 155 (S.D.N.Y.1984) *citing Chris–Craft Indus., Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 363 (2d Cir.1973).

This Court is therefore convinced that common questions do predominate, and that issues of individual reliance, though important, are best left for this Court to deal with (if necessary) at a later time when the merits may properly be assessed. *Walsh,* 162 F.R.D. at 446.

Additionally, during oral argument, MetLife's counsel stated that predominance may not be achieved because of a potential conflict between individual and institutional investors. (Tr. at 12–14.) The potential conflict arises out of the different manner in which institutional investors are treated in relation to the distribution of dividends after the demutualization. (*Id.*) In their Amended Complaint, Plaintiffs allege that MetLife "restricted the assets allocated to the payment of dividends to the assets in the closed block, thereby modifying and [sic] the dividend rights of participating policyholders." (Am. Compl. ¶ 55.) MetLife contends that institutional investor dividends are not limited to the assets from the closed block. (Tr. at 13.) Nevertheless, MetLife's counsel essentially conceded the point that the question of disparate treatment may be a question of fact to be determined at trial. (Tr. at 14.)

In any event, should the need arise to partition the separate claims or damages, this Court may modify this decision in several ways. *Id.* at 448. "[T]he possibilities of bifurcating liability and damage trials, decertifying the class after the liability trial, and creating subclasses" are all available as fallback positions should the need arise. *In re Visa Check/MasterMoney,* 280 F.3d at 145; *see also Dornberger,* 182 F.R.D. at 82–83.

▮ Plaintiffs easily satisfy the second prong of Rule 23(b)(3) in demonstrating that in this case "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). First, a class action is the most economical method of adjudicating Plaintiffs' claims given the large number of the putative class, and the inefficiency and attendant costs of commencing multiple lawsuits. *In re NASDAQ Market–Makers Anti-*

---

6. *See, e.g., Mayer v. Oil Field Sys. Corp.,* 803 F.2d 749, 755 (2d Cir.1986) and *Lewis v. McGraw,* 619

F.2d 192 (2d Cir.1980).

*trust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996). Second, the average amount expected to be recovered by Plaintiffs[7] is small enough that the putative class members will likely lack the incentive and means to litigate each claim separately. *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d at 245.

Finally, should the management of this case encounter any friction later on, this Court can return to the question of whether class certification is appropriate. *See* Fed. R.Civ.P. 23(c)(1); *In re Ashanti Goldfields Sec. Litig.*, No. 00–0717, 2004 U.S. Dist. LEXIS 5165, *55, 2004 WL 626810, *17–18 (E.D.N.Y. March 30, 2004).

### Conclusion

For the reasons stated above, Plaintiffs' motion for class certification is **GRANTED**. All of the named Plaintiffs are appropriate and adequate class representatives, except Mr. Darrell Murray, for the reasons discussed above.

**SO ORDERED.**

---

7. $668.80 is the average claim amount according to Plaintiffs' estimated damages chart supplied on page 8 of Plaintiffs' Reply Memorandum. That is, $668.80 is the figure ascertained by adding the estimated damages under Fraud, Disgorgement, and a 10 Share Rescission, and then after adding these figures together, dividing by five, the number of Plaintiffs listed on the chart.